UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| PI, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:12-cv-350 |
| M. MELANIE BEENE, JONES C. BEENE, | ) |
| IV AND F. ALLISON BEENE, | ) District Judge Harry S. Mattice, Jr. |
| | ) |
| Defendants and Third-Party | ) Magistrate Judge Susan K. Lee |
| Plaintiffs, | ) |
| | ) |
| v. | ) JURY DEMAND |
| | ) |
| JAMES JEFFERSON BEENE, II AND | ) |
| JONES C. BEENE, | ) |
| | ) |
| Third-Party Defendants. | ) |

---

**DEFENDANTS' FIRST AMENDED
COUNTERCLAIM AND THIRD-PARTY COMPLAINT**
_____

Defendants/Counter Plaintiffs/Third-Party Plaintiffs, M. Melanie Beene, Jones C. Beene, IV, and F. Allison Beene (collectively, "**Shareholders**"), for their First Amended Counterclaim against Plaintiff/Counter Defendant, PI, Inc. and their First Amended Third-Party Complaint against Third-Party Defendants James Jefferson Beene, II and Jones C. Beene (collectively, "**Third-Party Defendants**"), hereby state as follows:[1]

---

[1] Shareholders filed their initial counterclaim and Third-Party Complaint with their Answer to PI, Inc.'s complaint (Doc. 5, filed November 21, 2012). Because Shareholders are only seeking to amend their Counterclaim and Third-Party Complaint with this filing and are not seeking to amend their Answer, they have not restated their Answer herein. However, Shareholders reiterate and incorporate by reference Paragraphs 1 through 20 of their Answer as if set forth herein verbatim.

1

## PARTIES

21. Third-Party Plaintiff and Counter-Plaintiff M. Melanie Beene is an individual residing in San Francisco, California.

22. Third-Party Plaintiff and Counter-Plaintiff Jones C. Beene, IV is an individual residing in Mill Valley, California.

23. Third-Party Plaintiff and Counter-Plaintiff F. Allison Beene is an individual residing in Oakland, California.

24. Counter-Defendant PI, Inc. is a Tennessee corporation with its principal place of business at 213 Dennis Street, Athens, McMinn County, Tennessee.

25. Third-Party Defendant James Jefferson Beene, II is an individual residing in Athens, Tennessee. Upon information and belief, James Jefferson Beene, II resides at 120 Shadows Lawn Drive, Athens, Tennessee 37303 and can be served with process at that address.

26. Third-Party Defendant Jones C. Beene is an individual residing in Athens, Tennessee. Upon information and belief, Jones C. Beene resides at 237 Fyke Drive, Athens, Tennessee 37303.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this claim under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the parties. The damages alleged exceed $75,000, exclusive of interest and costs.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Third-Party Defendants reside in this District.

## BACKGROUND ON PI, INC.

29. PI, Inc. was incorporated as Plastics Industries, Incorporated by Jones C. Beene,

III and Kenneth D. Higgins on September 26, 1952. The purpose of PI, Inc. was set forth in the Charter as follows:

> The general nature of the business to be transacted by this corporation is
>
> (1) The purposes for which this corporation is formed are to carry on and conduct the ***plastic manufacturing business***, including the fabrication, moulding [sic], assembling, and otherwise treating plastic materials and making and manufacturing therefrom, signs, toys, notions, tools, implements, and any other products ***out of plastic materials***.
>
> (2) To establish a wholesale and retail ***plastic business***.
>
> (3) To apply for, obtain, register, purchase, lease, or otherwise acquire, to hold, use, own, operate, introduce, and to sell, assign, or otherwise dispose of any trademarks, tradenames [sic], copyrights, patents, inventions, improvements, and processes used in connection with the ***plastic manufacturing business***. [emphasis added.]

30.  At incorporation, the stock authorized to be issued by PI, Inc. included one thousand (1000) shares of no par value common stock, and five hundred (500) shares of preferred stock with a par value of $100.00. The preferred stock was non-voting stock.

31.  On May 28, 1959, an amendment to PI, Inc.'s Charter added two thousand shares of Class A common stock with a par value of $25.00 per share. The added stock was to have no voting rights. The Charter amendment read:

> Whereupon, on motion of Kenneth G. Higgins, duly seconded by Roy Nankivell, Jr. it was moved that the capital stock of Plastic Industries, Incorporated, be altered, changed, and amended so as to increase the said capital stock of said company by creating a new classification of stock as follows: "Two Thousand Shares of 'Class A' Common Stock with a par value of $25.00 per share. This said stock shall have on voting rights', and that the charter be amended accordingly and that the Directors of the Corporation shall call upon the president and secretary to execute a certified copy of the Minutes of the Board of Directors, providing for such amendment and a certified copy of the minutes of this Stockholders Meeting ….

32. By amendment to the Charter, the name of the company was changed to Plastic Industries, Inc. on May 10, 1973.

33. By further amendment to the Charter, the company's name was changed to PI, Inc. on September 17, 1986.

34. The 1986 amendment to the Charter also added to PI, Inc.'s authorized capital stock 10,000 shares of Class "B" non-voting common stock without a nominal or par value. That Charter amendment read:

> That ARTICLE FOURTH entitled STOCK WITH CLASSIFICATIONS AND DISTINGUISHING CHARACTERISTICS, IF ANY be amending [sic] by adding thereto the following paragraph:
>
> "The authorized capital stock of this Corporation shall also consist of 10,000 shares of Class "B" Non-Voting Common Stock without a nominal or par value. The holders of Class "B" Non-Voting Common Stock shall be entitled in all respects to equal rights and privileges with the holders of the no par value common stock except that the holders of Class "B" Non-Voting Common Stock shall not have by reason of their ownership thereof any right to vote or any voice in the management of the Corporation."

## LEADERSHIP OF PI, INC.

35. The company's principal founder was Jones C. Beene III. The Third Party Plaintiffs, M. Melanie Beene, Jones C. Beene, IV and F. Allison Beene, along with James Jefferson Beene ("**Jeff Beene**"), were the sons and daughters of Jones C. Beene, III and were brothers and sisters.

36. Jeff Beene was killed on January 31, 2009 in an attempted robbery of PI, Inc.

37. Third-Party Defendants are the sons of Jeff Beene (and the nephews of Shareholders). Upon information and belief, while other shareholders of PI, Inc. may exist, the vast majority of the shares of PI, Inc. are held by M. Melanie Beene, Jones C. Beene, IV,

F. Allison Beene, James Jefferson Beene, II and Jones C. Beene, who are all related as the descendants of Jones C. Beene III.

38. Jeff Beene's Last Will and Testament, dated July 3, 2002, (the "**Will**"), as filed with the Petition for Probate of Will and Granting of Letters Testamentary, in *The Estate of James Jefferson Beene, Deceased*, Case No. D4460 (General Sessions Court for Roane County, Tennessee at Kingston Probate Division) bequeathed his stock in PI, Inc. as follows:

### ITEM III.
### Stock in PI, Inc.

If, at the time of my death, I own any stock in PI, INC. then my Personal Representatives shall ascertain the then exempt amount from Tennessee Inheritance Taxes and set apart sufficient shares of stock in PI, INC., first of the Class B Non-Voting Shares of PI, INC., and then, if necessary, not more than forty-nine (49%) percent of the Class A Voting Shares of PI, INC., which shares of stock in the aggregate total value will not exceed in value the exempt amount for Tennessee Inheritance Taxes in my Estate. In setting apart these shares of stock to fund the distribution hereunder, said shares shall be valued at the value as finally determined for Federal Estate Tax purposes in my Estate. Once the number of shares of stock of Class B Non-Voting and/or Class A Voting Shares of stock in PI, INC. (subject to the limitation that not more than 49% of the Class A Voting Shares shall be available for distribution hereunder) has been determined, said shares shall be distributed in equal shares by Class, to each of my sons, provided said sons are employed at PI, INC., and in the event one of said sons is not so employed, then all of said shares of stock shall go to the son so employed at PI, INC.
. . .

### ITEM IV.
### Remaining Shares of PI, Inc. - Marital Trust for Wife if She Survives

If my Wife survives me the remaining fifty-one (51%) percent of my shares of Class A Voting Stock in PI, INC., and if, in addition to the shares of Class B Non-Voting stock distributed under Item III above to my sons, there remains as an asset of my Estate any shares of Class B Non-Voting Stock in PI, INC. my Personal Representatives hereinafter named shall distribute all of

said shares of stock to the Trustees hereinafter named as a Marital Trust Estate for the use and benefit of my Wife, Sophia Darlynn Beene.

39. As evidenced by the language of Item III of the Will, it was the intent of Jeff Beene that his sons, Third-Party Defendants, would not control more than 49% of the voting stock in PI, Inc. as long as their mother, and his wife, Sophia Darlynn Beene ("**Sophia Beene**"), was living.

40. The Will of Jeff Beene appointed as Co-Personal Representatives his wife, Sophia Beene and his sons, Third-Party Defendants.

41. Prior to closing of probate on the will, at a shareholders' meeting on March 5, 2010, a motion was made to transfer the Class B shares owned by Third-Party Defendants into Class A voting shares. The entire Shareholder's Meeting of March 5, 2010 reads as follows:

> Present: Jeff Beene, Jr, Jones C. Beene V.
>
> Notice was sent to all shareholders and only those above were in attendance.
>
> Meeting call to order by Jeff Beene, Jr.
>
> A vote to continue with the current slate of Directors was made by Jeff Beene, Jr and seconded by Jones Beene. Jones C Beene V representing Jeff Beene Sr. estate voted in favor. Quorum was established, no other votes needed.
>
> A motion was made to transfer Class B shares to Class A voting shares due to the personal liability of both Jeff, Jr and Jones on company debt. The transfer of these shares will not present any dilution issues. Vote was approved. Jones C Beene V representing the Estate of Jeff Beene Sr voted in favor. Quorum was established, no other votes needed.
>
> Meeting was adjourned.

42. As a result of the change of the voting rights of the Class B Non-Voting Shares owned by Third-Party Defendants from non-voting shares to Class A Voting shares, Third-Party Defendants became the controlling shareholders of the corporation.

43. On or about August 31, 2010, Third-Party Defendants issued themselves an additional 50 Class A Voting Shares each and have issued themselves additional Class B Non-Voting Stock on numerous occasions.

44. Third-Party Defendant James Jefferson Beene, II is the current President of PI, Inc. and is a member of PI, Inc.'s board of directors.

45. Third-Party Defendant Jones C. Beene is the current Vice President of PI, Inc. and is a member of PI, Inc.'s board of directors.

46. Collectively, Third-Party Defendants claim to own a significant majority of the Class A Voting stock and collectively have exerted control over the corporation.

47. Since the purported change in status of their stock, Third-Party Defendants have conducted the business of PI, Inc. in a way as to freeze out or squeeze out the minority shareholders.

**OPPRESSIVE CONDUCT AND BREACH OF FIDUCIARY DUTY**

48. As directors, officers, and majority shareholders of PI, Inc., Third-Party Defendants owe fiduciary duties of good faith, fairness, and loyalty to PI, Inc. and to Shareholders as shareholders of PI, Inc. In executing their responsibilities, Third-Party Defendants are prohibited from acting out of avarice, expediency, or self-interest in derogation of their duties. As fiduciaries, Third-Party Defendants have a strong duty not to conduct the affairs of PI, Inc. to the unfair detriment to Shareholders as minority shareholders holding legitimate interests in the corporation but lacking the power of the fiduciaries.

49.     However, in contravention of those duties, Third-Party Defendants, through PI, have acted in derogation of those fiduciary duties in a number of ways. Third-Party Defendants have breached their duties of good faith, fairness and loyalty to the Shareholders by, among other things, spending discretionary money of PI in a way that benefits the Third-Party Defendants, to the exclusion of the Shareholders, and other and various self-dealing that is beneficial to the Third-Party Defendants and detrimental to the interests of PI and the Shareholders. Some examples of this conduct are included here, but discovery of these issues is ongoing.

50.     ***Dividends***. Since around 1978, Shareholders have been receiving regular dividends from PI, Inc. For instance, M. Melanie Beene's tax returns show a fairly consistent dividend pattern of dividend payments from the corporation dating back to at least 1978 and totaling, through January 2009, over $60,000. However, since Third-Party Defendants have exerted control over PI, Inc. no dividends have been issued by the company. Upon information and belief, PI, Inc. has been profitable in each of the years comprising the Relevant Period and has adequate reserves. However, PI, Inc., under the leadership of Third-Party Defendants, has refused to pay dividends to Shareholders and to PI, Inc.'s other shareholders.

51.     ***Excessive Compensation.*** Third-Party Defendants have used their control of PI, Inc., to the detriment of Shareholders, to force payment of benefits to themselves in the form of excessive salaries, bonuses, and other monetary compensation. Such compensation increased significantly after Third-Party Defendants took control of PI, Inc.

52.     According to pay records produced by PI, Inc. in response to Shareholders' Requests for Production, the annual compensation received by Third-Party Defendant Jones C. Beene increased by more than 100% from 2009 to 2010. The compensation received by Third-Party Defendant Jones C. Beene in 2011 was almost four times what he received in 2007.

8
Case 1:12-cv-00350-HSM-SKL   Document 63   Filed 02/20/14   Page 8 of 19   PageID #: 1649

53. According to pay records produced by PI, Inc. in response to Shareholders' Requests for Production, the annual compensation received by James Jefferson Beene, II increased by almost 60% from 2009 to 2010. The compensation received by Third-Party Defendant James Jefferson Beene, II in 2011 was almost three times what he received in 2007.

54. The compensation received by both Third-Party Defendants remained at such elevated levels through 2012, decreasing only after Shareholders brought oppressive conduct claims against Third-Party Defendants.

55. Additionally, Third-Party Defendants have used their control of PI, Inc., to the detriment of Shareholders, to force payment of benefits to the other members of PI, Inc.'s Board of Directors, Todd Harris and Jennifer Johnson, in the form of excessive salaries, bonuses, and other monetary compensation.

56. According to pay records produced by PI, Inc. in response to Shareholders' Requests for Production, the annual compensation received by Todd Harris increased by more than 75% from 2009 to 2010. The compensation received by Todd Harris in 2011 and 2012 was more than twice what he received in 2009.

57. According to pay records produced by PI, Inc. in response to Shareholders' Requests for Production, the annual compensation received by Jennifer Johnson increased by more than 100% from 2009 to 2010. The compensation received by Jennifer Johnson in 2011 and 2012 was more than two and a half times what she received in 2009.

58. ***Unauthorized Acquisitions.*** PI, Inc., under the leadership of Third-Party Defendants, has also gone outside the plastics business, as set forth in the Charter, and acquired companies that are not authorized under the Charter. As set forth on PI, Inc.'s own website:

> PI's latest acquisition was both an unlikely and yet perfect choice in 2010: Knight Rifles (knightrifles.com), a premier brand of

9

Case 1:12-cv-00350-HSM-SKL   Document 63   Filed 02/20/14   Page 9 of 19   PageID #: 1650

muzzleloading rifles and accessories for the hunting industry. Knight is a household name that is already seeing success in its first full year of business as a part of the PI family, and there is much more to come. PI is proud to continue the Knight brand and carry it into the future, especially as a product line that is 100% American made. [http://www.pi-inc.com/about-us/history (visited November 21, 2012.]

59. **Self-Dealing.** Under the leadership of Third-Party Defendants, PI, Inc. has also made a series of insider transactions with shareholders. For instance, the August 31, 2011 audited financials from BDO Accounting Firm in Nashville Tennessee (the "**Audited Financials**") note: "In fiscal year 2008, the Company sold two warehouse buildings to one of its shareholders. The Company intends to lease back these buildings until such time as all production or materials housed are relocated to other facilities."

60. According the Audited Financials, "The Company has contracted with JR Contractors, LLC, which is wholly owned by several shareholders and members of management, to perform construction and demolition services; . . . The Company acquired fixed assets from JR Contractors, LLC…."; and "The Company recorded sales … to JR Contractors, LLC…." According to documents produced by PI, Inc. in response to Shareholders' Requests for Production, PI, Inc. has retained and paid J. R. Contractors, LLC hundreds of thousands of dollars a year between 2009 and 2011.

61. According to the Audited Financials, "The Company has notes receivable from certain shareholders and employees totaling $295,709 and $243,373 as of August 31, 2011 and 2010, respectively." For instance, the documents received from PI, Inc. in response to Shareholders' Requests for Production reflect Notes Receivable from Third-Party Defendant Jones C. Beene and from Third-Party Defendant James Jefferson Beene II of many thousands of dollars. Upon information and belief, such Notes Receivable represent loans made by PI, Inc., at the direction of Third-Party Defendants, to Third-Party Defendants at below-market interest rates

10
Case 1:12-cv-00350-HSM-SKL   Document 63   Filed 02/20/14   Page 10 of 19   PageID #: 1651

and were made solely for the personal benefit of Third-Party Defendants to the detriment of PI, Inc. and Third-Party Defendants.

62. On or about March 7, 2011, Third-Party Defendant James Jefferson Beene II, together with his wife, Danielle N. Beene, sold certain equipment to PI, Inc. Upon information and belief, such sale of equipment was completed solely for the personal benefit of Third-Party Defendant James Jefferson Beene II and his wife, Danielle N. Beene, and not for any legitimate business purpose of PI, Inc.

63. On or about July 7, 2012, Third-Party Defendant James Jefferson Beene, II entered into a Real Estate Sales Contract with the Estate of Arthur Burton Stowers, Jr. for the purchase of certain real property located in Meigs County, Tennessee (the "**Stowers Estate Property**"). The Real Estate Sales Contract was then assigned to PI, Inc. on August 27, 2012, and PI, Inc. purchased the Stowers Estate Property. On or about January 11, 2013, PI, Inc. sold the Stowers Estate Property to Third-Party Defendant James Jefferson Beene, II and his wife Danielle Beene for the same price at which PI, Inc. had acquired the Stowers Estate Property. Upon information and belief, there was no legitimate business purpose served by PI, Inc.'s purchase and resale of the Stowers Estate Property.

64. PI, Inc. entered into a lease agreement with Son Cured Records and Evans Branch Farms (the "**Lease Agreement**"), wherein Son Cured Records and Evans Branch Farms leased certain real property in Athens, Tennessee to PI, Inc. to be used by PI, Inc. as a private dwelling for a 60-month term commencing on the day of February 1st, 2013 and ending on January 30th, 2018. Upon information and belief, Third-Party Defendant Jones C. Beene is a member of a band called "Calling Glory" which does business with Son Cured Records, a/k/a "Soncured

Records." Further, "Jones Beene" is listed on the Tennessee Secretary of State's website as Registered Agent of Son Cured Records, LLC.

65. On or about August 25, 2011, PI, Inc. entered into a Settlement Agreement and Release of Claims ("**Settlement Agreement**") with Third-Party Defendants and Sophia Beene, mother of Third-Party Defendants, wherein Sophia Beene agreed, among other things, to execute a Quit Claim Deed transferring a three-acre lake parcel in Roane County, Tennessee (the "**Three Acre Lake Parcel**") to PI, Inc., and PI, Inc. agreed, among other things, (i) to employ Sophia Beene as a marketing advisor for the remainder of her life for an appreciable monthly salary; and (ii) to provide and pay for health insurance for Sophia Beene for the remainder of her life.

66. ***Denial of Access to Corporate Documents.*** PI, Inc., under the leadership of Third-Party Defendants, has consistently and pervasively denied Shareholders access to corporate records of PI, Inc., including such records as to which Shareholders are explicitly entitled by statute to inspect and copy. Specifically, and without limitation, PI, Inc. and Third-Party Defendants refused to comply with Shareholders' lawful written request to inspect and copy records of PI, Inc. PI, Inc. and Third-Party Defendants complied with such demand only after Shareholders filed an Application for Court Ordered Inspection, and this Court entered an Order compelling production of the requested documents. Further, PI, Inc. has failed to produce relevant, discoverable documents in response to Shareholders' Requests for Production.

67. ***Charitable Contributions***. Under the leadership of Third-Party Defendants, PI, Inc. has paid hundreds of thousands of dollars in charitable contributions per year from January 2010 to December 2012 to a variety of organizations, including multiple faith-based organizations. Upon information and belief, some or all such contributions were made for the

personal benefit of Third-Party Defendants and not for the legitimate business purposes of PI, Inc.

68. *Filing Suit*. Third-Party Defendants filed the declaratory judgment lawsuit in the name of PI, Inc. This has the effect of allowing them, as majority shareholders, to use the funds and resources of PI, Inc. to prosecute this lawsuit against Shareholders, which only benefits Third-Party Defendants.

69. Third-Party Defendants have utilized PI, Inc. as a vehicle through which to engage in conduct oppressive to Shareholders.

70. PI, Inc. has failed to restrict, oppose, or prevent the actions of Third-Party Defendants constituting oppressive conduct detrimental to Shareholders.

71. PI, Inc. has engaged in oppressive conduct by, for example, paying excessive compensation to the members of its Board of Directors, permitting and engaging in self-dealing transactions with its officers, directors, and/or controlling shareholders, using corporate funds to make excessive charitable contributions furthering no legitimate business purpose of PI, Inc.

72. Third-Party Defendants and PI, Inc., collectively and individually, have failed to treat all shareholders, including Shareholders, in a fair and equitable manner.

## COUNT I:
## OPPRESSIVE CONDUCT AND BREACH OF FIDUCIARY DUTY

73. Due to their oppressive and improper conduct, Third-Party Defendants are in breach of their fiduciary duties, under both the common law and TENN. CODE ANN. §§ 48-18-301 & 403, to PI, Inc. and to its shareholders, including Shareholders.

74. Because of the closely-held nature of PI, Inc., the conduct of Third-Party Defendants serves to unfairly deprive Shareholders of the opportunity to participate in the business and denies them a fair return on their investments.

75. The oppressive conduct of Third-Party Defendants has thwarted the reasonable expectations of Shareholders as minority shareholders of PI, Inc.

76. Upon information and belief, Third-Party Defendants have engaged in improper self-dealing and insider transactions with PI, Inc. to the detriment of Shareholders. Such transactions include, without limitation, improper, below-market loans using company funds made to certain of PI Inc.'s officers and directors; real estate transactions between PI, Inc. and Third-Party Defendants, entities in which Third-Party Defendants have a substantial interest, and/or family members or spouses of Third-Party Defendants; and charitable contributions made to entities chosen by Third-Party Defendants for the benefit of Third-Party Defendants.

77. Shareholders have demanded that dividends be declared by the Board and distributed by PI, Inc., however, PI, Inc., under the leadership of Third-Party Defendants, has failed and refused to declare dividends to PI, Inc.'s shareholders, instead paying Third-Party Defendants and other members of PI, Inc.'s Board of Directors improper dividends in the form of excessive salaries and other compensation.

78. Third-Party Defendants have failed to discharge their duties as directors and officers of PI, Inc. in good faith, to the detriment of Shareholders.

79. Third-Party Defendants have failed to discharge their duties as directors and officers of PI, Inc. with due and ordinary care, to the detriment of Shareholders.

80. Third-Party Defendants have failed to discharge their duties as directors and officers of PI, Inc. in a manner reasonably believed by Third-Party Defendants to be in the best interests of PI, Inc., to the detriment of Shareholders.

81. As a direct and proximate result of the oppressive conduct of Third-Party Defendants, the value of Shareholder's interest in PI, Inc. has decreased substantially due to,

among other things, PI, Inc.'s refusal to pay dividends as it has in the past; the bad faith, insider transactions that have taken place between PI, Inc. and its own corporate officers and directors; and the excessive and unreasonable salaries taken by Third-Party Defendants and other directors and/or officers.

82. PI, Inc. is the conduit by and through which Third-Party Defendants, as officers, directors, controlling shareholders, and agents of PI, Inc., intentionally, fraudulently, maliciously, and/or recklessly engaged in oppressive conduct in breach of their fiduciary duties to Shareholders, and PI, Inc. is therefore liable to Shareholders for damages sustained as a result of Third-Party Defendants' oppressive conduct and breach of fiduciary duties.

83. The oppressive conduct of Third-Party Defendants is so intricately intertwined with the operation of PI, Inc. that the full and fair resolution of Shareholders' claims necessarily requires the involvement of PI, Inc. as a party to this litigation.

## COUNT II:
## CIVIL CONSPIRACY

84. Third-Party Defendants, each acting with intent and knowledge of the other's intent, accomplished by concert, among other things, the deprivation to Shareholders of their right to participate in the business, the denial to Shareholders of a fair return on their investment, and the thwarting of the reasonable expectations of Shareholders.

85. The oppression of Shareholders by Third-Party Defendants, acting in concert, violates Tennessee law and therefore constitutes an unlawful purpose accomplished by unlawful means.

86. Third-Party Defendants have engaged in unlawful oppressive conduct which is outside the scope of their employment by PI, Inc. and have engaged in conspiratorial conduct with PI, Inc. to further their own personal purposes and not those of PI, Inc.

87. PI, Inc. and Third-Party Defendants are liable to Shareholders for civil conspiracy.

### COUNT III:
### VIOLATION OF TENNESSEE CODE
### ANNOTATED SECTION 48-26-101 ET SEQ.

88. PI, Inc. and Third-Party Defendants refused to allow Shareholders to inspect and copy records of PI, Inc. as provided by TENN. CODE ANN. § 48-26-101, *et seq*. Shareholders properly made demand for inspection pursuant to TENN. CODE ANN. § 48-26-102, and PI, Inc. and Third-Party Defendants refused inspection without a reasonable doubt about the right of Shareholders to inspect the records demanded.

89. Accordingly, Shareholders filed an Application for Court-Ordered Inspection [Doc. 11] with this Court, in which Shareholders sought an award of costs (including reasonable counsel fees) incurred to obtain an order compelling inspection and copying of the records demanded.

90. On February 4, 2013, this Court entered an Order compelling PI, Inc., at its own expense, to produce to Shareholders certain documents and electronically stored information [Doc. 28]. The Order held in abeyance the Shareholders' Request for Attorneys' Fees pursuant to TENN. CODE ANN. § 48-26-104(c) and explicitly stated that Shareholders' agreement to hold such issue in abeyance was not a waiver of Shareholders' right to seek such award.

### PRAYER FOR RELIEF

**WHEREFORE**, M. Melanie Beene, Jones C. Beene, IV and F. Allison Beene respectfully request that a jury be impaneled to try all issues in this action so triable by a jury and to enter an Order:

(a) declaring that Third-Party Defendants James Jefferson Beene, II and Jones C. Beene have intentionally, fraudulently, maliciously, and/or recklessly engaged in oppressive conduct in breach of their fiduciary duties; and

(b) declaring that PI, Inc., as the conduit by and through which Third-Party Defendants, as officers, directors, controlling shareholders, and agents of PI, Inc., intentionally, fraudulently, maliciously, and/or recklessly breached their fiduciary duties to Shareholders and PI, Inc., is liable to Shareholders for damages sustained as a result of Third-Party Defendants' oppressive conduct in breach of fiduciary duties;

(c) providing affirmative relief as this Court deems appropriate, including without limitation, a required declaration of a dividend or a reduction and distribution of capital in connection with an Order fixing officer and director salaries; a declaration requiring PI, Inc. or a majority of its stockholders to purchase Shareholders' stock at a fair and reasonable price; an award of damages to Shareholders as compensation for injuries suffered as a result of the oppressive conduct; a declaration requiring PI, Inc. to issue additional Class A Voting Shares to Shareholders; and/or a required offer to Shareholders to purchase those Class A Voting Shares of stock issued by Third-Party Defendants to themselves;

(d) preliminary and permanent injunctive relief;

(e) awarding Shareholders the court costs and reasonable attorney's fees incurred in this action as provided in TENN. CODE ANN. § 48-26-104;

(f) awarding Shareholders punitive damages; and

(g) awarding such other and further relief as this Court may deem just and proper.

DATED:  February 20, 2014.

          BAKER, DONELSON, BEARMAN,
           CALDWELL & BERKOWITZ, PC


         By: /s/ Clinton P. Sanko
          Cameron S. Hill, BPR No. 017408
          Clinton P. Sanko, BPR No. 023354
          Jamie L. Morton, BPR No. 031243
          1800 Republic Centre
          633 Chestnut Street
          Chattanooga, TN  37450-1800
          Telephone: (423) 209-4168
          Facsimile:  (423) 752-9580
          E-mail:  csanko@bakerdonelson.com

         *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

      I hereby certify that on February 20, 2014 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

      Brian C. Quist
      Joanna R. O'Hagan
      Quist, Cone & Fisher, PLLC
      2121 First Tennessee Plaza
      800 S. Gay Street
      Knoxville, TN 37929-2121

*Attorneys for Plaintiff and Third-Party Defendants*

      BAKER, DONELSON, BEARMAN,
       CALDWELL & BERKOWITZ, PC

By: s/Clinton P. Sanko
     Clinton P. Sanko, BPR No. 023354