PI, INC.,                                   )
                                            )
*Plaintiff,*                                )
                                            )          Case No. 1:12-cv-350
v.                                          )
                                            )          Judge Mattice
M. MELANIE BEENE, *et al.*,                 )
                                            )          Magistrate Judge Lee
*Defendants/Third-Party Plaintiffs,*        )
                                            )
v.                                          )
                                            )
JAMES JEFFERSON BEENE, II, *et al.*,        )
                                            )
*Third-Party Defendants*                    )
                                            )

## ORDER

Before the Court are Plaintiff's Motion for Partial Dismissal of the Amended Counterclaim (Doc. 96), and Third-Party Defendants' Motion for Partial Dismissal of the Third-Party Complaint (Doc. 94). For the reasons stated hereafter, Plaintiff's Motion (Doc. 96) will be **GRANTED IN PART** and **DENIED IN PART**, and Third-Party Defendants' Motion (Doc. 94) will be **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND AND FACTS

Plaintiff PI, Inc., (hereinafter, "PI") a Tennessee corporation, initiated this action against Defendants/Third-Party Plaintiffs M. Melanie Beene, Jones C. Beene, IV, and F. Allison Beene (hereinafter, "Minority Shareholders") in Tennessee state court on September 18, 2012. (Doc. 1-1). PI's Complaint alleges that Minority Shareholders, all residents of the state of California and shareholders in the Plaintiff-corporation, have

improperly demanded dividends and/or the purchase of their shares of stock by PI. (*Id.*). PI's Complaint requests declaratory judgment pursuant to Tenn. Code Ann. § 29-14-101, *et seq.*, as to the corporation's obligation to pay dividends to Minority Shareholders or purchase their shares of PI stock.[1] (*Id.*). On October 24, 2012, Minority Shareholders filed their notice of removal. (Doc. 1).

Thereafter, Minority Shareholders filed their Answer and Counterclaims (Doc. 5). On February 20, 2014, Minority Shareholders filed their First Amended Counterclaim and Third-Party Complaint alleging various causes of action against PI and against Third-Party Defendants James Jefferson Beene, II and Jones C. Beene (hereinafter "Controlling Shareholders"). (Doc. 63).

For the purpose of ruling on the instant motions for partial dismissal, the Court will assume that all of Minority Shareholders' well-pleaded factual allegations are true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

PI is a closely held, family run corporation formed to carry on and conduct plastics manufacturing.[2] (Doc. 63 at 3, 13). Since incorporation, PI has issued three categories of stock: Class A Voting, Class A Non-Voting, and Class B Non-Voting. (*Id.* at 3-4). Sometime after January 2009, Controlling Shareholders obtained the majority of PI's Class A Voting stock. (*Id.* at 7). Controlling Shareholders also control PI's board of

---

[1] PI's Complaint also requested a declaration regarding whether PI's officers and directors breached their fiduciary duties to the corporation. On February 19, 2014, PI filed a Motion for Partial Voluntary Dismissal (Doc. 57) stating that it no longer wished to proceed on its claim for declaratory judgment as to whether PI's officers and directors breached their fiduciary duties to the corporation. Accordingly, on June 19, 2014, the Court dismissed PI's claim for declaratory judgment as to whether PI's officers and directors breached their fiduciary duties owed to the corporation. (Doc. 127).

[2] PI was originally incorporated as Plastics Industries, Incorporated by Jones C. Beene, III and Kenneth D. Higgins on September 26, 1952. (Doc. 63 at 2-3). The company's principal founder was Jones C. Beene III. (*Id.* at 3-4). Defendants/Third Party Plaintiffs, M. Melanie Beene, Jones C. Beene, IV and F. Allison Beene, along with James Jefferson Beene ("Jeff Beene") were the sons and daughters of Jones C. Beene, III and are brothers and sisters. (*Id.* at 3-4). Jeff Beene was killed on January 31, 2009. (*Id.* at 4). Controlling Shareholders are the sons of Jeff Beene. (*Id.* at 4-5).

directors and act as the officers of PI with James Jefferson Beene, II serving as PI's President and CEO, and Jones C. Beene serving as PI's Executive Vice President. (*Id.*). Minority Shareholders allege that Controlling Shareholders have obtained and exerted control over PI based on their majority ownership of voting stock and their positions as officers and directors within PI. (*Id.* at 7).

Minority Shareholders maintain that since obtaining control over PI, Controlling Shareholders, acting as directors, officers, and majority shareholders for PI, have engaged in conduct in contravention of duties owed to Minority Shareholders. (*Id.* at 13). Specifically, Minority Shareholders allege that Controlling Shareholders have refused to issue dividends from PI to shareholders, but have taken payments from PI in the form of excessive salaries, bonuses, and other monetary compensation. (*Id.* at 8-9). Minority Shareholders also allege that PI, under the leadership of Controlling Shareholders, has acquired businesses outside of the plastics business, which is not authorized pursuant to PI's corporate charter. (*Id.* at 9-10). Minority Shareholders further allege that Controlling Shareholders have engaged in a pattern of self-dealing to the detriment of Minority Shareholders, including: (1) selling real estate owned by PI to one of its shareholders with the intent to lease back the real estate to PI; (2) contracting with companies which are wholly owned by PI's shareholders and members of management; (3) using PI's corporate funds to make loans to Controlling Shareholders at below-market interest rates; (4) assigning a real estate sales contract entered into by a Controlling Shareholder, individually, to PI with no legitimate business purpose; (5) entering into a real estate lease agreement on behalf of PI with the intent to use the property as a "private dwelling"; and (6) entering into a settlement agreement with Controlling Shareholders' mother on behalf of PI in which PI agreed to employ

Controlling Shareholders' mother for the remainder of her life. (*Id.* at 10-12). Finally, Minority Shareholders allege that PI, through its Controlling Shareholders, have denied Minority Shareholders access to PI's corporate records, have made excessive charitable contributions to the detriment of Minority Shareholders, and have filed the present lawsuit on behalf of PI specifically to allow Controlling Shareholders to use PI's funds to advance their claims. (*Id.* at 12-13).

Minority Shareholders' Amended Counterclaim and Third-Party Complaint identifies claims arising under Tennessee law against Controlling Shareholders and PI for: (1) "oppressive conduct and breach of fiduciary duty" arising under Tennessee statutory law and Tennessee common law; (2) civil conspiracy; and (3) failure to allow Minority Shareholders to inspect and copy records of PI in violation of Tenn. Code Ann. § 48-26-101. (*Id.* at 13-16). With regard to their claim for oppressive conduct and breach of fiduciary duty, Minority Shareholders specifically contend that PI is liable for the actions of Controlling Shareholders because PI is the "conduit" by and through which Controlling Shareholders "intentionally, fraudulently, maliciously, and/or recklessly engaged in oppressive conduct in breach of their fiduciary duties" and because the conduct of Controlling Shareholders "is so intricately intertwined with the operation of [PI] that the full and fair resolution of [Minority Shareholders'] claims necessarily requires the involvement of [PI] as a party to this litigation." (*Id.* at 15).

Based on these alleged violations of Tennessee law, Minority Shareholders request, among other things, affirmative relief in the form of: (1) a required declaration of dividends; (2) a reduction and distribution of capital in connection with an Order fixing officer and director salaries; (3) a declaration requiring PI or Controlling Shareholders to purchase Minority Shareholders' stock at a fair and reasonable price;

4

(4) damages; (5) a declaration requiring PI to issue additional Class A Voting Shares to Minority Shareholders; and/or (6) a required offer to Minority Shareholders to purchase certain Class A Voting Shares of stock issued to Controlling Shareholders. (*Id.* at 17).

On April 8, 2014, Controlling Shareholders filed their Motion for Partial Dismissal of the Third-Party Complaint and PI filed its Motion for Partial Dismissal of the Amended Counterclaim.[3] (Docs. 94, 96).

## II. STANDARD OF LAW

The Federal Rules of Civil Procedure provide, in relevant part, that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). While Rule 8(a) does not require plaintiffs to set forth detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At a minimum, Rule 8(a) requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" – that is, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 556 n.3 (2007). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is thus not a challenge to the plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at

---

[3] On April 15, 2014, Minority Shareholders' filed a Motion for Summary Judgment. (Doc. 100). The Court will rule on that motion by separate order.

556).  The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679; *Twombly*, 550 U.S. at 570 (holding that a complaint is subject to dismissal where plaintiffs failed to "nudg[e] their claims across the line from conceivable to plausible").  Although the Court must take all of the factual allegations in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice," and a plaintiff's legal conclusions couched as factual allegations need not be accepted as true.  *Iqbal*, 556 U.S. at 678; *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

As a preliminary matter, the Court notes that Controlling Shareholders' and PI's Motions for Partial Dismissal raise numerous issues related to Tennessee corporate law and its application to close corporations.  Central to both Motions for Partial Dismissal is the argument that, under Tennessee's body of corporate law, Minority Shareholders have failed to state actionable claims for oppressive conduct, breach of fiduciary duty, and/or civil conspiracy.  In response to these Motions, Minority Shareholders primarily argue that PI's status as a close corporation alters traditional rules of Tennessee

corporate law such that they can pursue these claims against both PI and Controlling Shareholders. The parties do not dispute that Tennessee law applies.

In resolving these issues of state law, "federal courts must apply state law in accordance with controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue." *Id.* "A federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* Several of the arguments set forth in the Motions to Dismiss require this Court to consider issues regarding close corporations which have not been explicitly addressed by the Tennessee Supreme Court. Accordingly, in ruling on the pending Motions, the Court will apply established principles of Tennessee law and rely upon guidance from the Tennessee Court of Appeals to ascertain how the Tennessee Supreme Court would rule if it were presented with these issues.

Closely held corporations differ from publicly held corporations in a number of key aspects. As defined by the Tennessee Supreme Court, a close corporation is a corporation in which: "(1) there are few shareholders, (2) the shares are not traded on the securities market, (3) the shareholders live in the same geographical area, and (4) most of the shareholders serve as directors, officers and employees of the business." *Nelson v. Martin,* 958 S.W.2d 643, 651 n.1 (Tenn. 1997) (*overruled on other grounds by Trau–Med of Am., Inc.,* 71 S.W.3d 691, 701 (Tenn. 2002)).

> [S]hareholders in a close corporation commonly are greatly concerned about the identity of their associates and have a strong desire to gain and hold the power to choose future shareholders or at least to veto prospective purchasers of shares whom they consider undesirable. They are reluctant to run the risk of having the harmony and balance of their business organization disturbed or the mutual respect and confidence of the shareholder-managers shattered by the unwelcome intrusion of strangers. As this last point suggests, business participants forming a close corporation not uncommonly consider themselves partners as to each other. They adopt the corporate form of business to obtain limited liability or some other real or fancied corporate advantage; they may think of their business as a corporation in its dealings with outsiders, but among themselves they are still "partners."

1 F. Hodge O'Neal & Robert B. Thompson, Close Corporations and LLCs: Law and Practice § 1:9 (Rev. 3d ed. 2014). Additionally, unlike a publicly held corporation, in a close corporation, there is often no division between shareholder-owners and corporate director-managers. *Id.* Stockholders often serve on the corporation's board of directors and also frequently serve as officers and executives for the corporation. *Id.* By serving as directors and officers, shareholders are able to personally manage and control the business directly. *Id.*

Due to the differences in closely held corporations and publicly held corporations, minority shareholders in a closely held corporation face unique challenges when they disagree with how the majority shareholders and/or officers and directors manage the corporation. First, "the market for the stock of a close corporation is limited, and a minority shareholder's interest in the corporation can be 'held hostage' by the controlling interests." *Cochran v. L.V.R. & R.C., Inc.*, 2005 WL 2217067, at *4 (Tenn. Ct. App. Sept. 12, 2005) (quoting *Balvik v. Sylvester*, 411 N.W.2d 383, 386 (N.D. 1987)). "[U]nlike members of a partnership, shareholders of a close corporation cannot dissolve the enterprise at will" and "unlike shareholders in a publicly held corporation, they cannot sell their shares on the market." *Id.* (citing *Muellenberg v. Bikon Corp.*,

669 A.2d 1382, 1386 (N.J. 1996)). "Because of the nature of the close corporation, majority shareholders in a close corporation can use oppressive tactics to 'freeze out' a minority shareholder." *Id.* (quoting *Balvik,* 411 N.W.2d at 386). "Freeze-out actions are those which deprive the minority shareholder of an opportunity to participate in the business and deny her a fair return on her investment." *Id.* "For example, where a minority shareholder is not employed by the corporation, controlling shareholders may elect not to pay dividends but receive a substantial return from the corporation in the form of salaries, 'effectively depriving the minority shareholder of every economic benefit that she derives from the corporation.'" *Id.* (quoting *Balvik*, 411 N.W.2d at 387).

Guided by these principles regarding close corporations, the Court will address the parties' arguments in turn. The Court notes that the following analysis specifically addresses issues related to Tennessee corporate law as applied to close corporations and should not be read to express any opinion regarding Tennessee corporate law as applied to publicly held corporations or any other type of corporate entity.

### A.    Controlling Shareholders' Motion to Dismiss (Doc. 94).

Controlling Shareholders move for dismissal of Minority Shareholders' claims for: (1) oppressive conduct and breach of fiduciary duty; and (2) attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c).[4]

#### 1.    Oppressive Conduct

Count I of Minority Shareholders' Amended Counterclaim and Third-Party Complaint is titled "Oppressive Conduct and Breach of Fiduciary Duty." (Doc. 63 at 13). In their Motion and supporting memorandum, Controlling Shareholders contend that Count I asserts two causes of action – one for "oppressive conduct" and a separate cause

---

[4] Controlling Shareholders have not moved to dismiss Minority Shareholders' claim for civil conspiracy.

of action for breach of fiduciary duties. (Doc. 95 at 2). Controlling Shareholders maintain that, to the extent Minority Shareholders have attempted to plead a separate cause of action for oppressive conduct, it should be dismissed because such a cause of action does not exist under Tennessee law. (*Id.*). In response, Minority Shareholders state that they have not alleged a separate and independent tort claim for oppressive conduct under Tennessee law; rather, Minority Shareholders argue that the term "oppressive conduct" describes a category of behavior that violates fiduciary duties owed by majority shareholders to minority shareholders in a closely held corporation. (Doc. 108 at 10).

Under Tennessee law, "'[o]ppressive conduct' is a broad term and includes conduct that is not necessarily illegal or fraudulent." *Cochran*, 2005 WL 2217067 at *5. "[W]hether the controlling shareholders [in a close corporation] have engaged in oppressive conduct can be measured in terms of fiduciary duties and the minority shareholder's 'reasonable expectations.'" *Id.* Oppressive conduct includes "conduct whereby the majority attempts to freeze or squeeze the minority shareholder(s) out of the business, depriving the minority of its right to participate in the management of the corporation and/or their right to benefit financially in the form of reasonable compensation or dividends." *Id.* "It is conduct whereby the controlling shareholders operate the business for their sole benefit and to the detriment of minority shareholders." *Id.* Oppressive conduct specifically "includes conduct whereby the controlling shareholders/directors do not declare dividends, but provide themselves with high compensation and enjoy the fullest patronage which corporate control entails," and "leav[e] minority shareholders who do not hold corporate office with the choice of getting little or no return on their investment for an indefinite period of time

or selling out to the majority stockholders at whatever price they will offer." *Id.* (internal citations and quotations omitted).

Minority Shareholders argument that their claim of "oppressive conduct" is not intended to represent a free-standing cause of action, but rather describes a category of conduct giving rise to a claim for breach of fiduciary duty is consistent with the Tennessee Court of Appeals' holding that "oppressive conduct can be measured in terms of fiduciary duties and the minority shareholder's 'reasonable expectations.'"[5] *Cochran*, 2005 WL 2217067 at, *5. Consistent with the interpretation of the Tennessee Court of Appeals, the Court agrees with Minority Shareholders that the term "oppressive conduct" describes a category of behavior that could give rise to a claim for breach of fiduciary duty against majority shareholders in a closely held corporation and finds that Minority Shareholders are not seeking to assert an independent cause of action for "oppressive conduct."

Because Minority Shareholders are not asserting a separate and free-standing claim for oppressive conduct, the Court must now determine whether Minority Shareholders have adequately alleged that Controlling Shareholders engaged in oppressive conduct such that they have breached fiduciary duties owed to the Minority Shareholders. Minority Shareholders have specifically alleged that Controlling Shareholders have conducted PI's business in a way so as to "freeze out or squeeze out" Minority Shareholders and deny them a fair return on their investments by, among

---

[5] Further, and contrary to Controlling Shareholders' arguments, Tennessee courts do not limit the applicability of an oppressive conduct analysis to claims for judicial dissolution of a corporation brought pursuant to Tenn. Code Ann. § 48-24-301. *See Cochran*, 2005 WL 2217067 at *2 (explaining that oppressive conduct in the context of judicial dissolution is functionally equivalent to a claim for breach of fiduciary duty brought against a majority or controlling shareholder); *see also, e.g., Caruana v. Marcum*, 2011 WL 2981364 (M.D. Tenn. July 21, 2011) (noting that oppressive conduct is conduct "which places a corporation's officers, directors, and/or majority shareholders in breach of their fiduciary duties to a minority shareholder").

11

other things, failing to pay dividends, taking excessive compensation as officers and directors, and engaging in improper self-dealing. (Doc. 63 at 7, 13-15). As explained more fully below, the Court concludes that in this case, the Minority Shareholders have alleged conduct by the Controlling Shareholders which, if proven, could constitute a breach of fiduciary duty. Thus, the Court finds that Minority Shareholders' Amended Counterclaim and Third-Party Complaint adequately alleges a facially plausible claim for breach of fiduciary duty based on Controlling Shareholders' oppressive conduct.

Accordingly, Controlling Shareholders' Motion to Dismiss will be **DENIED** to the extent it seeks dismissal of any claim or allegations related to "oppressive conduct."

2.      *Breach of Fiduciary Duty*

Controlling Shareholders next argue that the Court should dismiss Minority Shareholders' claim for breach of fiduciary duty because Minority Shareholders fail to plead facts sufficient to support a claim that the Controlling Shareholders breached their fiduciary duties. Controlling Shareholders note that they possess three distinct roles within PI's corporate structure: (1) shareholders; (2) directors; and (3) officers. Controlling Shareholders argue that Minority Shareholders' claim for breach of fiduciary duty employs a "unified corporate fiduciary duty theory" which fails to delineate what role the Controlling Shareholders occupied at the time the alleged wrongful actions took place. Additionally, Controlling Shareholders maintain that the only action a shareholder can take with respect to a dispute over corporate governance is to exercise their voting rights and that, because Minority Shareholders fail to allege that Controlling Shareholders breached fiduciary duties owed with respect to shareholder voting, Minority Shareholders have failed to state a claim for breach of fiduciary duty as it relates to actions taken by Controlling Shareholders as shareholders in PI.

Controlling Shareholders also argue that Minority Shareholders lack standing to pursue their breach of fiduciary duty claim because officers and directors owe fiduciary duties to the corporation itself and not to the corporation's shareholders. Thus, Controlling Shareholders contend that any claims for breach of fiduciary duty brought against officers and directors of a corporation must be brought as derivative claims on behalf of the corporation. Accordingly, Controlling Shareholders maintain Minority Shareholders lack standing to bring a breach of fiduciary duty claim directly against Controlling Shareholders for actions taken in their roles as officers and directors.

Under Tennessee law, a majority shareholder in a close corporation owes a fiduciary duty to minority shareholders. *Cambio Health Solutions, LLC v. Reardon,* 213 S.W.3d 785, 788 (Tenn. 2006) (citing *Nelms v. Weaver,* 681 S.W.2d 547, 549 (Tenn. 1984)). "[S]hareholders of a close corporation share a fiduciary relationship which imposes upon all shareholders the duty to act in good faith and fairness with regard to their respective interests as shareholders." *Hall v. Tennessee Dressed Beef, Co.,* 957 S.W.2d 536, 541 (Tenn. 1997); *see also Cochran*, 2005 WL 2217067, at *4 ("[A]s a result of the similarities between the relationship of shareholders in a close corporation and partners in a partnership, courts have held that the fiduciary duties of shareholders of a close corporation are akin to the fiduciary duties of good faith and loyalty charged to partners."). Consistent with this duty, "[a] majority shareholder is obligated to deal fairly with minority shareholders and not to act out of avarice, malice, or self-interest." *Reardon*, 213 S.W.3d at 788; *Rennell v. Through the Green, Inc.*, 2009 WL 2365564 (Tenn. Ct. App. July 31, 2009) (explaining that to prevail on a breach of fiduciary duty claim against a majority shareholder, a minority shareholder must establish that the majority shareholder acted out of "malice, avarice, or self-interest").

13

Fiduciary duties owed to minority shareholders in a close corporation extend to actions taken by majority shareholders in their management capacity. *See Cochran*, 2005 WL 2217067, at *4. "A transaction whereby an officer or director uses his position within the corporation, uses the corporation, or uses corporate funds for the purpose of promoting his personal interest at the expense of another shareholder may be the basis for a cause of action against the officer or director." *Hall*, 957 S.W.2d at 541. Thus, a minority shareholder can pursue direct claims for breach of fiduciary duty against a corporate officer or director who is also a majority shareholder in a closely held corporation. *Id.*; *see also Rennell*, 2009 WL 2365564.

In this case, the Court finds that Minority Shareholders have adequately alleged a claim for breach of fiduciary duty against Controlling Shareholders and that Minority Shareholders are permitted to pursue that claim directly against Controlling Shareholders. As explained above, Minority Shareholders have alleged that Controlling Shareholders engaged in oppressive conduct and breached fiduciary duties owed to Minority Shareholders by attempting to "freeze" them out of PI. Additionally, Minority Shareholders have alleged that Controlling Shareholders acted out of "avarice, expediency and self-interest" by, among other things, failing to pay dividends, taking excessive compensation, and engaging in a pattern of self-dealing to the detriment of Minority Shareholders. (Doc. 63 at 7-13). Such allegations, if proven true, could demonstrate that Controlling Shareholders violated fiduciary duties owed as shareholders, officers and/or directors to Minority Shareholders. Accordingly, because Minority Shareholders have stated a plausible claim for breach of fiduciary duty against Controlling Shareholders, Controlling Shareholders' motion to dismiss Minority Shareholders' claim for breach of fiduciary duty will be **DENIED**.

14

### 3. *Attorneys' Fees Pursuant to Tenn. Code Ann. § 48-26-104(c)*

In their Motion for Partial Dismissal, Controlling Shareholders argue that Minority Shareholders cannot maintain a claim against Controlling Shareholders for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) because such a claim is only actionable against PI. Tenn. Code Ann. § 48-26-104(b) provides:

> If a **corporation** does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with § 48-26-102(b) and (c) may apply to the court of record having equity jurisdiction in the county where the corporation's principal office (or, if none in this state, its registered office) is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection (b) on an expedited basis.

Tenn. Code Ann. § 48-26-104(b) (emphasis added). In the event that a court orders inspection and copying of the records demanded, "it shall also order the **corporation** to pay the shareholder's costs (including reasonable counsel fees) incurred to obtain the order if the shareholder proves that the corporation refused inspection without a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." Tenn. Code Ann. § 48-26-104(c) (emphasis added).

The Court agrees with the Controlling Shareholders and finds that Minority Shareholders have failed to state a claim for attorneys' fees against the Controlling Shareholders. According to the statute, the Court shall order the corporation – that is, PI – to pay costs and reasonable attorneys' fees if Minority Shareholders prove that PI refused inspection without a reasonable basis for doubt about the right of the shareholder to inspect the records demanded. The statute makes no provision for seeking costs and attorneys' fees directly from majority shareholders, officers, and/or directors. Accordingly, because the Court finds that Minority Shareholders have failed to state a claim for attorneys' fees against Controlling Shareholders, Controlling

Shareholders' motion to dismiss Minority Shareholders' claim for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) will be **GRANTED**.[6]

### B. PI's Motion to Dismiss (Doc. 96).

In its Motion, PI moves to dismiss Minority Shareholders' claims for: (1) oppressive conduct and breach of fiduciary duty; and (2) civil conspiracy.

#### 1. *Oppressive Conduct and Breach of Fiduciary Duty*

In its Motion for Partial Dismissal, PI argues that Minority Shareholders have not stated a claim for breach of fiduciary duty against PI. (Doc. 97 at 5). Specifically, PI contends Minority Shareholders' allegations that PI is the "conduit" through which Controlling Shareholders' engaged in oppressive conduct and breached fiduciary duties owed to Minority Shareholders is insufficient to state a claim for breach of fiduciary duty as to PI because Tennessee law does not recognize "conduit liability." (*Id.*).

Minority Shareholders counter that they have stated a claim for breach of fiduciary duty against PI based on their allegations that PI is the "conduit" by and through which Controlling Shareholders "fraudulently, maliciously and/or recklessly engaged in oppressive conduct in breach of fiduciary duties owed to [Minority Shareholders]." (Doc. 63 at 15). Minority Shareholders specifically contend that, due to the level of control that Controlling Shareholders exert over PI, "it is reasonable under applicable law to consider the Controlling Shareholders and PI as one and the same." (Doc. 108 at 21). In essence, Minority Shareholders contend that PI's corporate form should be disregarded or the so-called "corporate veil pierced" and that PI should be

---

[6] PI's Motion for Partial Dismissal of the Amended Counterclaim does not argue that Minority Shareholders fail to state a claim for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) against PI. (Doc. 97 at 3). Accordingly, the Court's dismissal of Minority Shareholders' claim for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) against Controlling Shareholders has no bearing on Minority Shareholders' claim for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) against PI.

16

held liable for the tortious conduct of Controlling Shareholders due to their status as "one and the same." (*Id.*).

A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors. *Schlater v. Haynie,* 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). A corporation's separate identity may be disregarded or "pierced," however, "upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Id.* However, the decision to pierce the corporate veil should be applied "with great caution and not precipitately." *Id.* In determining whether to disregard the corporate form, courts must examine the special circumstances of each case. *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.,* 691 S.W.2d 522, 526 (Tenn. 1985). The burden is on the party seeking to pierce the corporate veil to prove facts sufficient to warrant such an action. *Schlater,* 833 S.W.2d at 925.

Generally, creditors seeking to pierce the corporate veil are creditors of the corporation attempting to pierce the veil of the corporation to reach the assets of the individual or individuals in control of the corporation. *Nadler v. Mountain Valley Chapel Bus. Trust,* 2004 WL 1488544 (Tenn. Ct. App. June 30, 2004). However, sometimes creditors seek to "reverse pierce" or "hold a corporation accountable for actions of its shareholders." *Id.* (quoting *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d 846, 866-67 n. 12 (Tenn. Ct. App. 2000)). The Tennessee Supreme Court has only implicitly recognized the concept of reverse piercing in the context of a parent/subsidiary relationship and, to date, has not addressed whether the concept of reverse veil piercing is available in the shareholder/corporation context. *See Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo,* 578 S.W.2d 625, 632-33 (Tenn.

1979). To that end, Tennessee appellate courts and federal courts interpreting Tennessee law have consistently declined to extend the reverse veil piercing doctrine to the shareholder/corporation context. *See, e.g.*, *S.E.A., Inc. v. Southside Leasing Co.*, 2000 WL 1449852, at *8-10 (Tenn. Ct. App. Sept. 29, 2000) (declining to apply the reverse veil piercing doctrine to a closely held corporation); *Reagan v. Connelly*, 2000 WL 1661524, at *6-7 (Tenn. Ct. App. Nov. 6, 2000); *Nadler*, 2004 WL 1488544, at *4-5; *see also Nippert v. Jackson*, 860 F.Supp.2d 554, 573-74 (M.D. Tenn. 2012) *Starnes Family Office, LLC v. McCullar*, 765 F.Supp.2d 1036, 1049-50 (W.D. Tenn. 2011); *Hartford Fire Ins. Co. v. CMC Const. Co.*, 2010 WL 3338581, at *23-24 (E.D. Tenn. Aug. 24, 2010).

Considering how the reverse veil piercing doctrine has been interpreted by Tennessee courts, the Court declines to extend the reverse veil piercing doctrine to the shareholder/corporation context. This case does not involve a parent/subsidiary relationship and Tennessee courts have not recognized reverse veil piercing in the context of a shareholder/corporation dispute. The parties have not identified any reason to depart from this precedent. Accordingly, the Court declines to use the reverse veil piercing doctrine in this case to determine whether Minority Shareholders have stated a claim for breach of fiduciary duty against PI.

Alternatively, Minority Shareholders contend that it is "reasonable, appropriate, and right for PI to remain a Defendant so the Court may exercise jurisdiction and control over its actions" because some of the relief requested by Minority Shareholders involves requests for "action on the part of the corporation." (Doc. 108 at 23). Citing *Cochran* for the proposition that certain remedies, like forced declarations of dividends and required buybacks of shareholders' stock, are potentially available in the context of

18

disputes between minority and majority shareholders in a closely held corporation, Minority Shareholders maintain that resolution of their claims "require the involvement if PI." *Id.*

The Court finds that Minority Shareholders' requested equitable relief, including forced dividends and forced buybacks of Minority Shareholders' stock, fails to provide a sufficient basis for finding that Minority Shareholders' have stated a claim for breach of fiduciary duty against PI. The Court reaches this conclusion based on the principles set forth in *Cochran.* 2005 WL 2217067. *Cochran* suggests that a court has significant discretion in fashioning equitable relief in the context of a statutory claim for judicial dissolution. *Id. Cochran* also states that a claim for oppressive conduct in the context of judicial dissolution is functionally equivalent to a claim for breach of fiduciary against majority shareholders in a closely held corporation.[7] *Id. Cochran* does not, however, hold that stating a claim for breach of fiduciary duty against a majority or controlling shareholder necessarily means that a plaintiff has stated a claim for breach of fiduciary duty against the corporate entity. *See id.* Rather, as stated in *Cochran*, "an allegation of oppressive conduct [in a claim for judicial dissolution] essentially alleges a breach of fiduciary duty *on the part of controlling or majority shareholders.*" *Id.* at *2 (emphasis added). Based on these considerations, the fact that Minority Shareholders have asserted a claim for breach of fiduciary duty against Controlling Shareholders and have also requested that the Court order certain equitable relief involving PI does not mean that Minority Shareholders have necessarily stated a claim for breach of fiduciary duty against PI. Because Minority Shareholders have not cited, and the Court's research has

---

[7] A claim for judicial dissolution of a corporation is a statutory claim under Tennessee law. Tenn. Code Ann. § 48-24-301. The Court notes that Minority Shareholders have not asserted a claim for judicial dissolution in this matter.

not revealed, any other basis for finding that Minority Shareholders' requested relief supports a claim for breach of fiduciary duty against PI, the Court finds that Minority Shareholders' requested equitable relief involving PI is an insufficient basis to state a claim for breach of fiduciary duty against PI.

Accordingly, as the Minority Shareholders have failed to state a plausible claim for breach of fiduciary duty against PI, PI's Motion to Dismiss will be **GRANTED**.

### 2. Civil Conspiracy

PI next argues that Minority Shareholders have failed to state a claim against PI for civil conspiracy. Specifically, PI maintains that Minority Shareholders have failed to plead facts demonstrating that PI is an actor – separate and apart from Controlling Shareholders – that took affirmative action in furtherance of an actionable conspiracy against Minority Shareholders. (Doc. 97 at 6-7). Under Tennessee law, "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002).

As a general rule, the intracorporate conspiracy immunity doctrine provides that a corporation and its agents cannot be the sole parties to a civil conspiracy because the authorized actions of a corporation's officers, directors, employees, and other agents are attributable to the corporation such that the identity of the corporation and its agents merge. *Id.* Because a civil conspiracy requires two or more persons or entities to be actionable, a civil conspiracy is generally not "legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship." *Id.* Accordingly, the Tennessee Supreme Court has held that "[t]he

acts of [corporate] representatives, if performed within their representative, agency, or employment capacities on behalf of the corporation, are attributed to the corporation" and that "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment." *Id.*

However, an exception to the intracorporate conspiracy immunity doctrine exists when officers, directors, employees, or other corporate agents act outside the scope of their employment. As explained by the Tennessee Supreme Court, "it is this 'scope of employment' exception that prevents the intracorporate conspiracy immunity doctrine from being applied too broadly and thereby immunizing all private conspiracies from redress where the actors coincidentally were employees of the same company." *Id.* at 704. Accordingly, "for a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation." *Id.*; *see also Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994) (holding that "when employees act outside the scope of their employment, they and the corporation may form a conspiracy under federal law.").[8]

At this stage of the litigation, the Court cannot conclude as a matter of law that Minority Shareholders' allegations are insufficient to state a claim for civil conspiracy against PI. While it is likely that certain alleged actions taken by Controlling

---

[8] Although *Johnson* involved a claim asserted under federal statutory law, the Tennessee Supreme Court relied on it in explaining the parameters of the intracorporate conspiracy immunity doctrine. *Trau-Med*, 71 S.W.3d at 704.

Shareholders – such as refusing to pay dividends and taking excessive compensation – constitute actions taken solely within the scope of their employment as officers and directors of PI, the Court cannot determine from the face of the Amended Counterclaim and Third-Party Complaint whether other Controlling Shareholder actions fall outside the scope of their employment such that the intracorporate conspiracy immunity doctrine is rendered inapplicable. For example, Minority Shareholders allege that a Controlling Shareholder sold certain equipment to PI and that the sale of equipment was completed solely for the personal benefit of a Controlling Shareholder and his wife without "any legitimate business purpose of [PI]." (Doc. 63 at 11). Similarly, Minority Shareholders allege that PI made loans to Controlling Shareholders at below-market interest rates and that such loans were made solely for the personal benefit of Controlling Shareholders and to the detriment of PI. (*Id.* at 10-11).

Selling equipment to PI and receiving personal loans from PI at below-market interest rates arguably constitute actions taken by Controlling Shareholders that fall outside the scope of their employment as shareholders, officers, and directors of PI. Minority Shareholders allegations that PI entered into these transactions with no legitimate business purpose and solely for the individual benefit of Controlling Shareholders is sufficient for Minority Shareholders to state a plausible claim for civil conspiracy against PI under Tennessee law. Whether specific actions taken by Controlling Shareholders fall outside the Controlling Shareholders' scope of employment and whether PI combined with Controlling Shareholders acting outside the scope of their employment to breach fiduciary duties owed to Minority Shareholders are questions of fact that are inappropriate for resolution on a motion to dismiss.

Accordingly, PI's motion to dismiss Minority Shareholders' claim for civil conspiracy will be **DENIED**.

### C. Remedies

Both Motions to Dismiss assert that certain remedies sought by Minority Shareholders are not available as a matter of law and should be dismissed. Federal Rule of Civil Procedure 12(b)(6) permits a party, by motion, to seek dismissal of "claims" made against it. The requested remedies specified in a pleading do not qualify as "claims" and, thus, are not subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

Further, it appears based on the parties' pleadings and briefs thus far that resolution of Minority Shareholders' claims for breach of fiduciary duties and civil conspiracy will involve numerous and potentially complicated factual disputes. Given that the Court has not yet been presented with a full factual record regarding these issues, the Court finds it inappropriate to determine, at this stage, what remedies may be available (or unavailable) to Minority Shareholders in the event that they succeed on their claims at trial. Because the Court believes that a determination of the remedies available in this case may only be made after a thorough investigation of the underlying facts, the Court will not declare that certain remedies are or are not be available to Minority Shareholders in ruling on Controlling Shareholders' and PI's Motions for Partial Dismissal. Accordingly, PI's and Controlling Shareholders' Motions will be **DENIED** to the extent that they request that the Court declare that certain remedies are unavailable to Minority Shareholders.

## IV. CONCLUSION

For the reasons stated herein, PI's Motion (Doc. 96) is hereby **GRANTED IN PART** and **DENIED IN PART**, and Third-Party Defendants' Motion (Doc. 94) is hereby **GRANTED IN PART** and **DENIED IN PART**:

- PI's Motion for Partial Dismissal (Doc. 96) is **GRANTED** as to Minority Shareholders' claim for breach of fiduciary duty and **DENIED** as to Minority Shareholders' claim for civil conspiracy;

- Controlling Shareholders' Motion for Partial Dismissal (Doc. 94) is **GRANTED** as to Minority Shareholders' claim for attorneys' fees pursuant to Tenn. Code Ann. § 48-26-104(c) and **DENIED** as to Minority Shareholders' claim for breach of fiduciary duty.

- PI's and Controlling Shareholders' Motions for Partial Dismissal (Doc. 96, 94) are **DENIED** to the extent that they request that the Court declare that certain remedies are unavailable to Minority Shareholders.

**SO ORDERED** this 18th day of August, 2014.

_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

24